# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

COY PHELPS,                              :

      Plaintiff,                       :        Case No. 3:12cv00344

  vs.                                  :        District Judge Thomas M. Rose
                                       Chief Magistrate Judge Sharon L. Ovington

RION MACCONNELL, *et al.*,               :

      Defendants.                      :

---

# REPORT AND RECOMMENDATIONS[1]

## I.  <u>Introduction</u>

Plaintiff Coy Phelps is incarcerated in the Federal Medical Center, FMC-Devens, in Ayer, Massachusetts. He brings this case *pro se* asserting claims under state and federal civil and criminal law against several Defendants including, in part, U.S. Mint Green and its "members" such as Rita MacConnell. Plaintiff alleges that he paid U.S. Mint Green over $2,000.00 in exchange for certain services Defendants agreed to provide. Despite his payment, Defendants have allegedly not provided Plaintiff with the agreed-upon services and have not returned any money to him.

The case is presently pending upon Defendant Rita MacConnell's (Defendant MacConnell's) Motion to Dismiss (Doc. #16), Plaintiff's Memorandum in Opposition (Doc.

---

[1]  Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

#21), Defendant MacConnell's Counterclaim and Request for Attorney Fees (Doc. #17), Plaintiff's Opposition and Response (Doc. #s 12, 18), and the record as a whole.

Defendant MacConnell acknowledges that she "signed for certified mail on two occasions...," and she argues "that is the sole reason she was named as a defendant." (Doc. #16, PageID at 299).

## II.    Plaintiff's Pro Se Complaint

Plaintiff's Complaint is approximately 40 pages with approximately 120 pages of attached exhibits. He states in his Complaint that he was the "pastor of a politically incorrect Christian church that was incorporated in California." (Doc. #1, PageID at 23). Before his incarceration, he proselytized antisemitic views "by radio broadcasts, by a monthly magazine..., lectures in various homes, in public libraries, in churches, in some schools, and by the traditional leaflets and flyers." *Id*. Plaintiff explains that he was arrested in 1985 and charged with "bombing ... synagogues and the homes of ... rabbis (but none of the bombs detonated)." (Doc. #1, PageID at 24). "After trial, the jury found [him] not guilty by reason of insanity." *Id*.

In 1997, doctors concluded that Plaintiff was not insane, incompetent, or mentally ill and wanted him unconditionally released from incarceration. Plaintiff was released in January 1999 under certain conditions. But in March 2001, he was arrested for violating the conditions of his release. He was provided with a revocation hearing in 2002 after which he "was sent to federal prison at FMC-Butler North Carolina." (Doc. #1, PageID at 32).

Plaintiff remains incarcerated, presently at FMC-Devens. His Complaint describes his

many unsuccessful attempts over the years to convince the federal courts to release him from

incarceration. According to the Complaint:

> [P]laintiff finally realized that there is no justice for him in the judicial
> system. He concluded that his only hope for obtaining justice, a review of the
> merits of his arguments, and, ultimately his release, was to obtain public
> interest and to arouse the public to take political action against the judges who
> made such absurd decisions in the petitions submitted to them. The only
> method available was to campaign for public office on a radical platform that
> would gain public attention and stir controversy. Over a ten year period the
> plaintiff sought someone reliable to get a political campaign website posted on
> the internet and to publish his books. Several people advertised in publications
> that they would do so but when the plaintiff paid them and sent them copies of
> the campaign and copies of the manuscript, they refused and refused to return
> the money.
>
> Finally, the plaintiff responded to the advertisement made by
> [Defendant] U.S. Mint Green. They promised to get the political campaign
> website posted long before the election AND to get the book published on
> amazon.com and with another printer and distributor. The plaintiff has missed
> three elections because of repeated breaches of contract. It is because of this
> that this lawsuit proceeds.

(Doc. #1, PageID at 33-34) (capitalization in original). Among the 30-plus services U.S.

Mint Green allegedly agreed to provide to Plaintiff was re-typing the manuscript of the book

he wrote and titled "LORD NAZI." *Id*., PageID at 47-52. Defendants also agreed to get

Plaintiff's book published on amazon.com; to send the original book manuscript to his

sister-in-law along with disk copies of the website Defendants agreed to create; to register

many specific internet domain names such as www.lordnazi.com, www.nazinetwork.com,

www.sovereigncitizen.com; and to "re-type and create the politically incorrect political

campaign website sent to U.S. Mint Green (titled www.lordnazi.com) into internet language

...." (Doc. #1, PageID at 48). Plaintiff also alleges that Defendants agreed to send a mass e-

3

mail composed by Plaintiff to many prominent radio talk show hosts and their producers "and all other[] discoverable talk show hosts and producers," directing them to the www.lordnazi.com website.  *Id*., PageID at 50-51.

Plaintiff seeks, in part, an award of restitution in the amount of $2,100.00; compensatory and punitive damages in the amount of "ten million tax free dollars"; "injunctive relief, replevin relief, and promissory estoppel remedy." *Id*., PageID at 58.

**III.   Discussion**

Defendant MacConnell contends that dismissal of Plaintiff's claims against her is warranted under Fed. R. Civ. P. 12(b)(6) because "[n]owhere in the Complaint does [Plaintiff] make any allegations against Rita MacConnell. Rita MacConnell is mentioned in the suit based on the unfounded presumption that she is a 'member' of U.S. Mint Green." (Doc. #16, PageID at 301).

To determine whether a *pro se* Complaint states a claim upon which relief can be granted, the Court accepts the factual allegations as true and construes the Complaint liberally in the plaintiff's favor. *See Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011); *see also Scott v. Ambani*, 577 F.3d 642, 646 (6th Cir. 2009). "[T]o survive a motion to dismiss a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting in part *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1974, 1965 (2007)). "'A claim has facial plausibility when the plaintiff

4

pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129

S.Ct.1937, 1949 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic

recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it

tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* (internal citations

omitted). Deciding whether a complaint states a claim for relief that is plausible is a

"context-specific task that requires the reviewing court to draw on its judicial experience and

common sense." *Id.*, 556 U.S. at 663-64, 129 S.Ct. at 1940.

   Plaintiff's Complaint first mentions Rita MacConnell by alleging that she is a

"member" of U.S. Mint Green. (Doc. #1, PageID at 21). The Complaint then provides an

"overview of the case," "background information," and "statement of issues" without

mentioning Rita MacConnell or identifying a misdeed she committed that injured Plaintiff.

*See id.*, PageID at 21-46. Instead, the Complaint refers to "defendants" briefly in some

places and at length elsewhere. Briefly, for example, Plaintiff alleges, "The defendants

deliberately deceived the plaintiff with false promises and misrepresentations and those false

promises and misrepresentations caused the plaintiff to suffer damage, harm, and injury."

*Id.*, PageID at 39. Plaintiff's lengthy references to "defendants" are also exemplified by part

of his "RICO" allegations:

   [T]he defendants operated a continuing criminal racketeering enterprise
with criminal patterns, schemes, designs and plans that posed a threat of being
a future criminal racketeering enterprise and that the defendants injured the
plaintiff in his business and property, and because of, and but for, that criminal
activity the plaintiff would not have suffered irreparable physical, mental,
emotional, spiritual and economic loss, harm, injury, anguish, pain, and

5

suffering and would not have suffered a deprivation of his constitutional, statutory, civil, and common law guarantees, freedoms, liberties, rights, privileges, immuniyies [sic], protections, and safeguards.

(Doc. #1, PageID at 35-36).

The next specific mention of Rita MacConnell is in Plaintiff's "statement of fact" where he again lists her name among the names of other individuals who allegedly are "members" of U.S. Mint Green. *Id.*, PageID at 46. Throughout this section and the remaining pages of the Complaint, Plaintiff did not identify an act or omission of wrongdoing by Defendant MacConnell that harmed him. *Id.*, PageID at 46-58.

Accepting Plaintiff's allegations as true and liberally construing his *pro se* pleading in his favor, his Complaint fails to provide "sufficient factual matter" to raise a plausible claim of relief against Defendant MacConnell. *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949. The Complaint merely lists her as a "member" of U.S. Mint Green without identifying any particular wrongdoing, or any act or omission, by her that harmed Plaintiff. As a result, the Complaint reveals its insufficiency through its "labels and conclusions" as well as its "'naked assertion[s]' devoid of 'further factual enhancement'" concerning any alleged wrongdoing by Defendant MacConnell. *Id.* (quoting *Twombly*, 550 U.S. at 555, 557, 127 S.Ct. 1955).

Plaintiff attempts to surmount this problem by contending that "defendants aided and abetted one another and cheated him out of his money and property and never returned his money or property and that the defendants cheated him out of his right to hold public office and to receive financial contributions to the political campaign. The plaintiff ... (in the

section 'Statement of Issues' of the Complaint) informed the court of the laws that made the defendants liable for cheating. The plaintiff has stated a claim and the defense[s] proposed by the attorneys for the defendants fail." (Doc. #21, PageID at 344). He similarly asserts, "As long as one person in the conspiracy has SOME contact with the injured party, all the conspirators, and those who aid and abet them, are liable." (Doc. #12, PageID at 241) (capitalization in original).

Plaintiff's contentions do not overcome Defendant MacConnell's Motion to Dismiss. Although the Complaint lumps Defendant MacConnell into a group of "defendants" who allegedly violated Plaintiff's rights, its references to wrongdoing by "defendants" fails to reveal what Defendant MacConnell herself did wrong. Neither her act of signing for certified mail, *see* Doc. #16, PageID at 299, nor her status as a "member" of U.S. Green illuminate any wrongdoing she allegedly did that harmed Plaintiff. "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under [42 U.S.C.] § 1983. That pleading standard is 'relatively strict.'" *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 563 (6th Cir. 2011) (citations omitted). Given the absence of allegations showing that wrongdoing by Defendant MacConnell harmed Plaintiff, the Complaint fails to meet the "relatively strict" conspiracy-pleading standard and fails to contain "factual content that allows the court to draw the reasonable inference that [Defendant MacConnell] is liable for the misconduct alleged" or for the harm that allegedly befell Plaintiff. *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 556,

127 S.Ct. at 1955); *see Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003) (To support

a conspiracy theory, plaintiff must show, in part, "that an overt act was committed in

furtherance of the conspiracy that caused injury to the complainant.").

In addition, "a plaintiff cannot overcome a Rule 12(b)(6) motion to dismiss simply by

referring to conclusory allegations in the complaint that the defendant violated the law."

*16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, __ F.3d __, 12-2620, 2013 WL

4081909 at *2 (6th Cir. Aug. 14, 2013). Plaintiff missteps in precisely this manner by

pointing to his claims against all defendants. This fails to identify any part of the Complaint

that contains "enough 'factual matter' to raise a 'plausible' inference of ..." wrongdoing by

Defendant MacConnell that harmed Plaintiff. *Id*. (quoting *Iqbal*, 556 U.S. at 678, 129 S.Ct.

1937). And a thorough search of the Complaint for such factual matter reveals only that

Defendant MacConnell was a member of U.S. Mint Green, which is not enough to raise a

plausible inference that she engaged in wrongdoing or that her wrongdoing harmed Plaintiff.

*See id*.

Plaintiff's opposition to Defendant MacConnell's Motion to Dismiss attempts to

refute various defenses or legal arguments raised by Defendants, including "statute of

limitations under [Ohio Rev. Code] 2305.10," "contributory and comparative negligence,"

and "failure to mitigate injuries/damages," and "payment defense." (Doc. #21, PageID at

332-42). Plaintiff's arguments in opposition to these defenses or legal arguments do nothing

to illuminate any factual content in his Complaint that is sufficient to state a plausible claim

for relief against Defendant MacConnell. Plaintiff also contends that Defendants' attorneys

"have not made an ANSWER to the complaint, but, rather, have only submitted piecemeal installment Motions to Dismiss but a motion to dismiss is not a responsive pleading required by the Federal Rules of Civil Procedure." (Doc. #21, PageID at 331) (citation omitted; capitalization in original). This is incorrect as to Defendant MacConnell, who has filed an Answer to Plaintiff's Complaint. Although Defendant MacConnell's subsequent Motion to Dismiss is more properly a Motion for Judgment on the Pleadings, *see* Fed. R. Civ. P. 12(c), this causes no unfair surprise or prejudice to Plaintiff because the Court applies the same standards when evaluating both types of motions. *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).

Next, Plaintiff relies on Fed. R. Civ. P. 12(g)(2) and argues that dismissal of the motions to dismiss is necessary because Defendants' attorneys have made successive Motions to Dismiss that merely add defenses. Plaintiff asks "that the court strike the motions that are duplicative and to strike all issues in successive motions that are not stated in Rule (h)(2) [presumably, "Rule 12(h)(2)"] ...." (Doc. #21, PageID at 342).

Rule 12(g)(2) of the Federal Rules of Civil Procedure provides:

> Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.

Dismissal of Defendant MacConnell's Motion to Dismiss under Rule 12(g)(2) is not warranted because two of the Rule's exceptions, listed in Rule 12(h)(2), apply. First, Rule 12(h)(2) allows Defendant MacConnell to seek dismissal in her Answer under Fed. R. Civ. P. 12(b)(6), then later file a Rule 12(b)(6) motion. *See* Fed. R. Civ. P. 12(g)(2), 12(h)(2)(A).

9

Second, Defendant MacConnell's Rule 12(b)(6) motion is more properly a motion for judgment on the pleadings under Rule 12(c), as noted previously. A defendant may file a motion for judgment on the pleadings after filing an Answer that asserts a failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(g)(2), 12(h)(2)(B).

Accordingly, for all the above reasons, Defendant MacConnell's Motion to Dismiss is well taken.

* * *

Defendant MacConnell requests an award of $5,000.00 in attorney fees because Plaintiff chose to file suit against her even though it is patently clear from the materials attached to the Complaint that she is not an employee of U.S. Mint Green. Defendant MaConnell, however, does not rely on a statute, rule, or case in support of her request for attorney fees. She has therefore not established that she is entitled to recover her attorney fees. *See Griffin Indus., Inc. v. U.S. E.P.A.*, 640 F.3d 682, 685 (6th Cir. 2011) ("Ordinarily, under the American Rule, 'deeply rooted in our history and in congressional policy,' each party bears its own attorney fees.).

## IT IS THEREFORE RECOMMENDED THAT:

1.    Defendant MacConnell's Motion to Dismiss (Doc. #16) be GRANTED; and

      2.       Defendant MacConnell's Counterclaim and Request for Attorney Fees (Doc. #17) be DENIED.

September 11, 2013

                                                                    s/Sharon L. Ovington         

                                                      Sharon L. Ovington
                                    Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).

12