## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| COY PHELPS, | : | |
| Plaintiff, | : | Case No. 3:12cv00344 |
| vs. | : | District Judge Thomas M. Rose |
| | | Chief Magistrate Judge Sharon L. Ovington |
| RION MACCONNELL, *et al*., | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATIONS[1]

### I.  Introduction

Plaintiff Coy Phelps is an inmate at the Springfield Federal Medical Center in Missouri.[2]  He brings this case *pro se* against a company – Defendant U.S. Mint Green, Ltd. – that provides publishing and marketing services to inmates who have authored their autobiographies or other materials.  Additional Defendants are Rion MacConnell and Heather F. Green, allegedly "members" of Defendant U.S. Mint Green.

Plaintiff's Complaint asserts several federal claims including, for example, violations

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

[2] In 2005, the United States Court of Appeals for the Ninth Circuit explained, "Coy Phelps [is] an insanity acquitee committed to hospitalization under 18 U.S.C. § 4243 ...."  *Phelps v. United States*, 120 Fed. App'x 744, 2005 WL 332765 (9th Cir. 2005). For more information, see *United States v. Phelps*, 283 F.3d 1176 (9th Cir. 2002).

of the Racketeer Influenced and Corrupt Organizations Act (RICO), conspiracy to violate RICO, "Copyright Infringement/False Authorship," and conspiracy to interfere with civil rights in violation of 42 U.S.C. § 1985(3). The Complaint also asserts many claims under Ohio law including, in part, breach of contract, fraudulent inducement, and conversion. Among the relief Plaintiff seeks is an award of "restitution damages" in the amount of $2,100.00 and "punitive damages in the amount of ten million tax free dollars." (Doc. #1, PageID at 58).

The case is presently pending upon Plaintiff's Motion for Summary Judgment or Judgment as a Matter of Law, which Defendant Rion MacConnell opposes, and Plaintiff's Motion to Strike Defendant Rion MacConnell's response in opposition. (Doc. #s 48, 49, 53). The case is also pending upon Defendant MacConnell's ("Defendant's") Motion for Partial Summary Judgment or Motion for Partial Judgment on the Pleadings, which Plaintiff opposes (Doc. # 51, 55), and the record as a whole.[3]

## II.    **Plaintiff's Complaint and Motion for Summary Judgment**

To place the parties' present motions in context, it suffices to incorporate the Court's present review of Plaintiff's Complaint plus a few brief observations.[4] (Doc. #s 26, 28).

Plaintiff's factual allegations largely concern his unsuccessful efforts to secure

---

[3] Plaintiff's Complaint was not subject to the preliminary screening mandated by 28 U.S.C. §1915(e) because he is not proceeding *in forma pauperis*. *See Brown v. Bargery*, 207 F.3d 863, 865-66 (6th Cir. 2000).

[4] Plaintiff's lengthy Complaint is approximately 40 pages with approximately 120 pages of attached exhibits.

2

Defendants' help in publishing and publicizing a manuscript he wrote.  He titled his manuscript "LORD NAZI" and subtitled it, "His Writings and Teachings for Racist White Supremists and True Christian Warriors of God."  (Doc. #1, PageID at 95).  Plaintiff alleges that pursuant to his contract with Defendants, he paid them $2,100 to perform publishing and related services, but Defendants did nothing and kept the $2,100.

In his Motion for Summary Judgment, Plaintiff restates certain allegations raised in his Complaint and supports the allegations with citations to his Complaint.  (Doc. #48, PageID at 515).  He then identifies the following six services he paid Defendants to perform, supported by citations to the Complaint.

1.  Register Domain names on the internet and get copyrights on the domain names;

2.  Send mass e-mail to radio talk show hosts and producers;

3.  Get a book, written by the plaintiff, published on amazon.com and distribute [the] books;

4.  Publish a political campaign website on the internet;

5.  Make copies of the political campaign writings and the book on computer disks and mail to plaintiff's sister in law; [and]

6.  Search for publicity agents and send them mass e-mail.

(Doc. #48, PageID at 514) (internal citations omitted).  Plaintiff states that although Defendants notified him they had received his payment and performed all requested services, "defendants lied and did not provide any service that they were paid to do ...."  *Id*., PageID at 514-15.

Plaintiff's Motion for Summary Judgment next lists "OTHER FACTS." *Id.*, PageID at 515 (capitalization in original). This is a misnomer to the extent that his list contains a mixture of factual allegations and references to violations of law. Regardless, Plaintiff emphasizes that he alleges in pages two and three of his Complaint that Defendants:

1. In violation of Ohio's Unfair and Deceptive Business Practices Act (O.R.C. 3901.19 et seq.) and

2. In violation of Ohio State's Constitution Statement of Rights

3. And in violation of Federal, State, Civil, and Common law

4. Obstructed justice and onstructed [sic] an official investigation and

5. Acted in a conspiracy, and in an agreement, to aid and abet one another,

6. To operate a Criminal Racketeering Enterprise and business,

7. Utilizing criminal mail and wire fraud, misappropriation,

8. That affected intrastate and interstate commerce ....

\* \* \*

19. To falsely induce the plaintiff to send them money

Which caused the plaintiff to

20. Suffer a loss of property and money

21. Suffer a loss of a[n] opportunity and chance to hold public office

22. Suffer a loss of revenue from a book publication

23. Suffer a loss of expected revenue from the political campaign

And the defendants substantially contributed to the plaintiff

4

24.     Suffering a stroke

25.     By the negligent and intentional infliction of emotional distress ....

(Doc. #48, PageID at 515-16).

Plaintiff argues that summary judgment in his favor is warranted because "the facts are so one sided for the plaintiff that there is no defense for the defendants." *Id*., PageID at 513).

Under Rule 56 a party is entitled to summary judgment when there is no genuine dispute over any material fact and when the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 247 (1986).  When resolving whether a genuine issue of material fact exists, all reasonable inferences are drawn in the light most favorable to the non-moving party.  *Richland Bookmart, Inc. v. Knox County, Tenn*., 555 F.3d 512, 520 (6th Cir. 2009) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587-88 (1986)).  "The function of the court in assessing a summary judgment motion is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'"  *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008) (quoting, in part, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

"Summary judgment is appropriate 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  *Seeger v. Cincinnati Bell Tel. Co., LLC*,

5

681 F.3d 274, 281 (6th Cir. 2012) (quoting *Daugherty*, 544 F.3d at 702); *see Celotex*, 477 U.S. at 322.

Plaintiff is not entitled to summary judgment because he has not met his initial burden to show there is no genuine dispute over an issue of material fact and that he is entitled to judgment as a matter of law.  "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 247 (6th Cir. 1991) (quoting *Celotex*, 477 U.S. at 323); *see Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009).  Plaintiff's Motion for Summary Judgment does not satisfy his initial responsibility.  Instead, he merely restates some of his allegations, such as the services Defendants were allegedly supposed to, but failed to, provide under the terms of their contract.  Neither those allegations nor his lengthy list of "OTHER FACTS" demonstrate that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law on any of his claims.

Plaintiff's Motion also fails to show that the evidence is so one-sided that a reasonable jury could only rule one way:  in his favor on one or more of his claims.  Where, as in the present case, "the moving party has the burden of proof at trial – the plaintiff on a claim for relief or the defendant on an affirmative defense – *his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving*

*party*." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (emphasis in original) (citation omitted).  "This means that, if the moving party has the burden of proof at trial, that party must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in that party's favor." *Vasquez v. City of Bell Gardens*, 938 F.Supp. 1487, 1494 (C.D. Cal. 1996) (emphasis in original) (citation omitted).  Plaintiff's Motion for Summary Judgment does not connect evidence of record with the particular elements of his claims.  This shortcoming fails to show that a jury could only find in his favor on one or more of his claims.  He is not, therefore, entitled to summary judgment in his favor.

Plaintiff disagrees.  He contends that his Motion for Summary Judgment requires Defendant "to come forward with more than a scintilla of evidence showing specific and particular arguable proof, facts, and evidence, in opposition to the issues and facts in the plaintiff's motion for summary judgment showing there are specific genuine issues of material fact in dispute."  (Doc. #53, PageID at 545).  This argument, however, overlooks that Plaintiff carries the ultimate burden of proving his claims.  In light of this burden, his showing in support of his Motion for Summary Judgment "must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone*, 799 F.2d at 259 (emphasis omitted); *see Vasquez*, 938 F.Supp. at 1494.  Because his Motion does not do so, he is not entitled to summary judgment on his claims.

Accordingly, Plaintiff's Motion for Summary Judgment lacks merit.

7

### III.    Defendant MacConnell's Motion for Partial Summary Judgment or Motion for Partial Judgment on the Pleadings

#### A.    The Parties' Contentions[5]

Defendants view Plaintiff's Complaint as mainly raising a breach of contract claim. *See, e.g.,* Doc. #51, PageID at 534, 539 ("At its heart this is a contract case"; "This is a contract case and nothing more." (Doc. #51, PageID at 534, 539).  Defendant MacConnel's alternative Motion for Partial Judgment on the Pleadings "respectfully ask[s] that this Honorable Court grant partial judgment on the pleadings and dismiss plaintiff's cause of action asking for punitive damages." *Id.*, PageID at 541.

Plaintiff argues that Defendants ignore pages 15 though 26 of his Complaint, "listing the torts ... the defendants committed ... " and asserting "that the defendants are liable for the torts they committed. (Doc. #55, PageID at 558).  Plaintiff further argues that Defendants fail to raise, and have therefore waived, challenges to many of his claims.

Defendants' Reply asks for much more than his Motion: "<u>Defendants respectfully ask that all causes of action other than breach of contract be dismissed</u>."  (Doc. #56, PageID at 575) (emphasis in original).

In light of Defendants' broad request for dismissal of all Plaintiff's claims (except his breach of contract claim), and given the parties' respective arguments, the discussion that follows describes the applicable standards, then applies those standards to Plaintiff's

---

[5] Although the presently pending Partial Motions are captioned as brought by Defendant MacConnell, all remaining Defendants seek relief.  (Doc. #56, PageID at 575).  The remaining discussion thus refers to all remaining "Defendants" rather than Defendant MacConnell only and considers whether they are entitled to relief.

Complaint in several stages by considering: (1) Plaintiff's federal claims; (2) his state-law claims; and (3) his requests for punitive damages in connection with his breach of contract claim.  As will be explained, review of the Complaint leaves only Plaintiff's breach of contract claim for last and for *sua sponte* consideration of subject matter jurisdiction.

> **B.**    **Applicable Standards**

Two main cases – *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009) – apply to resolving a motion for judgment on the pleadings. *See HDC, LLC v. City of Ann Arbor,* 675 F.3d 608, 611 (6th Cir. 2012); *see also Fritz v. Charter Tp. of Comstock,* 592 F.3d 718, 722 (6th Cir. 2010).  Under *Twombly* and *Iqbal*, the "Court construes the complaint in a light most favorable to the plaintiff, accepts all factual allegations as true, and determines whether the complaint states a plausible claim for relief." *HDC,* 675 F.3d at 611 (citations omitted); *see Iqbal*, 550 U.S. at 678.  "*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed."  *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (citation omitted).

A complaint's factual allegations "need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible....  However, 'a legal conclusion couched as a factual allegation' need not be accepted as true on a motion to dismiss [or a Rule 12(c) motion], nor are recitations of the elements of a cause of action sufficient."  *Fritz,* 592 F.3d at 722 (quoting, in part, *Iqbal,* 556 U.S. at 678-79; other

9

citations omitted).

> In keeping with these principles a court considering a motion to dismiss [or motion for judgment on the pleadings] can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal,* 556 U.S. at 679.

"'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Jasinski v. Tyler,* 729 F.3d 531, 538 (6th Cir. 2013) (quoting *Iqbal,* 556 U.S. at 678).  Factual allegations need not be detailed, and "[t]hreadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555).  The plaintiff must allege enough facts "to raise a right to relief above the speculative level ...." *Twombly,* 550 U.S. at 555.  "Where complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal,* 556 U.S. at 678 (citation and internal quotations omitted).

In the end, "[d]etermining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id*., 556 U.S. at 679 (citations omitted).

10

### C.  Plaintiff's Federal Claims

### 1.

A violation of RICO, 8 U.S.C. § 1962(c), "requires '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'"  *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 404 (6th Cir. 2012) (quoting *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 (1985)).  A plaintiff must allege sufficiently specific facts on each RICO element to state a plausible RICO claim.  *See id.*

Plaintiff's Complaint asserts:

> [D]efendants formed a criminal racketeering enterprise under the name U.S. Mint Green Ltd., and as members of the corporation, operated the enterprise to commit violations of federal, State, Civil, and Common law that caused the plaintiff irreparable physical, mental, emotional, and economic harm, injury, pain and suffering.

(Doc. #1, PageID at 35).

Plaintiff's RICO claim makes no attempt to connect the Complaint's allegations with any RICO element.  The Complaint provides many facts about his personal and legal history.  Yet, these background facts, when accepted as true and construed in Plaintiff's favor, do not point towards any element of a RICO claim, let alone a RICO violation by Defendants.  *See* Doc. #1, PageID at 23-34.  Next, the Complaint identifies Plaintiff's RICO claim but only advances conclusory assertions containing RICO terms without factual support.  For instance, this section of the Complaint states the following unsupported conclusory allegations:

> The plaintiff alleges that the defendants operated a continuing criminal

11

> enterprise with criminal patterns, schemes, designs and plans that posed a real
> threat of being a future criminal racketeering enterprise and the defendants
> injured the plaintiff in his business and property, and because of, and but for,
> that criminal activity the plaintiff would not have suffered irreparable physical,
> mental, emotion, spiritual and economic loss, harm ... and would not have
> suffered a deprivation of his constitutional, statutory, civil, and common law
> guarantees, freedoms, liberties, rights, privileges, immuni[t]ies, protections,
> and safeguards.

(Doc. #1, PageID at 35-36).  Such "threadbare recitals of elements...," lacking support with something more than "mere conclusory statements," fail to raise a plausible RICO claim. *Iqbal*, 556 U.S. at 678 (discussing *Twombly*, 550 U.S. at 555).

Searching the Complaint for more specific RICO allegations leads next to the pages identifying Plaintiff's other claims and requests for damages under various headings with only minimal or conclusory supporting allegations.  (Doc. #1, PageID at 36-45).  The Complaint then turns to Plaintiff's "Statement of Facts" and "Statement of Claims."  *Id*., PageID at 46-58.  The Statements consist of a bit more than 12 pages of factual allegations related to the parties' communications, the details of Plaintiff's numerous requests and payments (amounting to $2,100) to Defendants for their services, and Defendants' acts and omissions.  *Id*., PageID at 46-56.  But, these Statements are conclusory and make no attempt to connect particular facts to a RICO violation committed by Defendants or to the elements of a RICO claim.

Perhaps the RICO claim's most obvious omission is allegations pointing to the key RICO element of "racketeering activity."  To satisfy the element of racketeering activity, Plaintiff's Complaint must contain sufficiently specific facts (when taken as true) to raise a

reasonable inference that Defendants committed "acts which are indictable under a number of federal statutes listed in 18 U.S.C. §1961(1)(B)."  *Heinrich*, 668 F.3d at 404.  The Complaint does not do so.  Instead, it sets forth a laundry list – or in Twombly */Iqbal* terms, mere "labels and conclusions," 556 U.S. at 678 – referring to some of the predicate racketeering acts identified in 18 U.S.C. §1961.  Without further factual illumination, the list simply mentions mail fraud, wire fraud, obstruction of justice, and "fraud and misuse of government forms and documents."  (Doc. #1, PageID at 35).  Neither this list nor any other allegations in the Complaint are adequate to support a reasonable conclusion that Defendants engaged in conduct indictable under the federal statutes listed in §1961(1)(B).  As a result, Plaintiff's right to relief under RICO is speculative rather than plausible.  And the Complaint therefore fails to plead factual content that allows the Court to draw a reasonable inference that Defendants are liable to him for a RICO violation.  *See Iqbal*, 556 U.S. at 678.

Accordingly, Defendants are entitled to judgment on the pleadings in their favor on Plaintiff's RICO claim.

**2.**

In support of his claim of copyright infringement/false authorship, the Complaint alleges, "The plaintiff sent the defendants a book manuscript to get published and they declared themselves to be the original author of he [sic] book in the copyright form ... just as they had done to over eighteen other authors."  (Doc. #1, PageID at 42).  He further alleges that he paid Defendants to obtain copyrights and the defendants promised to obtain a copyright in the name of the plaintiff but, instead, the defendants obtaibed [sic: presumably,

13

"obtained"] copyrights under their own names thereby depriving the plaintiff of copyright protection." *Id*., PageID at 57.

Plaintiff's Complaint does not contain sufficiently specific facts to support a claim of copyright infringement or false authorship. Accepting the Complaint's allegations as true, the copyrights Plaintiff wanted to obtain concerned his manuscript titled, "LORD NAZI, His Writings and Teachings for Racist White Supremists and True Christian Warriors of God." (Doc. #1, PageID at 95). The Complaint fails to identify where, when, or to whom Defendants published LORD NAZI using their name as author or their name as the copyright claimant, instead of identifying Plaintiff as the author and copyright claimant. The Complaint does not identify a work that Defendants passed off as their own that was substantially similar to LORD NAZI. He merely raises a conclusory and speculative claim that Defendants engaged in copyright infringement or false authorship without providing any meaningful supporting facts. His copyright infringement/false authorship claims therefore lack facial plausibility. *See Iqbal*, 556 U.S. at 678; *see also Ellis v. Diffie*, 177 F.3d 503, 506 (6th Cir. 1999) ("To establish copyright infringement, a plaintiff must show: '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'")(citation omitted).

It is also worth pausing to note that Plaintiff's allegations are not consistent with the public records of the U.S. Copyright Office, which the Court may take judicial notice of under Fed. R. Evid. 201. Those public records reveal that as of 2008, Plaintiff – not any Defendant – has been the copyright claimant in Plaintiff's LORD NAZI book manuscript

14

and title page.[6]  Given this, Plaintiff's copyright infringement claim fails as a matter of law for lack of copyright ownership.  *See Ellis*, 177 F.3d at 506.

Each of Plaintiff's remaining federal claims likewise suffers from insufficient factual pleading.  Plaintiff's RICO conspiracy claim is conclusory and suffers from the same lack of facts identifying predicate racketeering activities that is missing from his RICO claim. Plaintiff's conspiracy claim under 42 U.S.C. §1985(3) is likewise conclusory and speculative, rather than plausible.

Accordingly, Defendants are entitled to judgment on the pleading in their favor on Plaintiff's federal claims.

### D.    Plaintiff's State-Law Tort Claims

Plaintiff's Complaint advances tort claims based on Ohio law under the following headings:  joint venture enterprise; breach of implied covenant of good faith, fair dealings, and honest services; breach of duty [sic]; fraudulent inducement; false and misleading advertising; deceit; negligent - intentional misrepresentation; conversion; negligent - intentional infliction of emotional; loss of opportunity or chance/right to publicity/right to hold office; and unjust enrichment.  The Complaint provides few, if any, specific factual allegations under each heading and instead provides only conclusory comments with citations to the various Restatements of Law and case law.  This is seen, for example, under the heading "Conversion," where the Complaint states:

---

[6]  *See* http://www.copyright.gov (search Public Catalog for "LORD NAZI").

> Ohio Revised Code 222A, 229, and 235 and Restatement (Second) of Torts 22A recognizes two types of conversion (1) when the possessor of property has acquired the property but refuses to return the property upon demand of the owner of the property and refuses to pay the owner for the property, (2) when the possessor has acquired the property wrongfully or unlawfully and, without authorization of the owner, exercises control of the property (Zacchini v. Scripp-Howard, 1976, 47 Ohio St2d 224, 351 N.E.2d 439 at 456-457). Conversion is the malicious, wrongful, and illegal privation of ownership rights to property.
>
> Under the Restatement, liability will lie against the defendants even when the owner has lost the property or even when the defendants have mistakenly appropriated the property, and even if the defendants have not received the benefits from the conversion.

(Doc. #1, PageID at 39-40). The Complaint contains no other information or factual allegations under this heading. Assuming in Plaintiff's favor that his ownership rights concerned his LORD NAZI manuscript, the Complaint does not allege sufficiently specific facts, rather than mere conclusions, to raise a reasonable inference that Defendant committed conversion "by a wrongful act or disposition of plaintiff's property rights ..." in LORD NAZI. *Jack F. Neff Sand & Gravel, Inc. v. Great Lakes Crushing, Ltd.*, 2014-Ohio-2875, 2014 WL 2958279 at *7 (Oh. Ct. App., June 30, 2014). Other than appearing to allege that Defendants took LORD NAZI for their own use, the Complaint sheds no factual light on what that use was, when it occurred, or how Defendants disposed of Plaintiff's property rights in LORD NAZI. The Complaint therefore fails to raise a plausible conversion claim.

The Complaint is similarly deficient in its lack of facts sufficient to support the plausibility of his other state-law tort claims. Accepting Plaintiff's allegations as true and liberally construing the Complaint in his favor, the most the Complaint accomplishes is to

16

"plead facts that are 'merely consistent with' [Defendants'] liability ...." *Iqbal*, 556 U.S. at

678.  The Complaint therefore "stops short of the line between possibility and plausibility of

[Plaintiff's] 'entitlement to relief,'" *id*., on his state-law tort claims.

Turning to an even more intractable problem for Plaintiff, his state-law claims arise

from the same factual allegations that give rise to his breach of contract claim.

> In Ohio, "generally, the existence of a contract action excludes the
> opportunity to present the same case as a tort claim." *Textron Fin. Corp. v.
> Nationwide Mut. Ins. Co.,* 115 Ohio App.3d 137, 684 N.E.2d 1261, 1270
> (Ohio Ct. App. 1996) (quoting *Wolfe v. Continental Cas. Co.,* 647 F.2d 705,
> 710 (6th Cir. 1981)).  This is because where parties have reached an agreement
> "protection for economic losses should arise under the bargained-for contract."
> *Middleton v. Rogers Ltd., Inc.* 804 F. Supp.2d 632, 639 (S.D. Ohio 2011)
> (citing *Chemtrol Adhesives, Inc. v. American Mfrs. Mut. Ins. Co.,* 42 Ohio
> St.3d 40, 537 N.E.2d 624, 630–31 (1989)); (*see also Corporex Dev. & Constr.
> Mgt., Inc. v. Shook, Inc.,* 106 Ohio St.3d 412, 835 N.E.2d 701, 704 (2005)
> ("When a duty in tort exists, a party may recover in tort. When a duty is
> premised entirely upon the terms of a contract, a party may recover based upon
> breach of contract")).  Further, a party may not transform a breach of contract
> claim into a tort claim by simply additionally alleging that the opposing party
> intentionally, wantonly, or maliciously failed to perform its contractual duties.
> *Ketcham v. Miller,* 104 Ohio St. 372, 136 N.E. 145, 146–147 (1922); *see also
> Wolfe v. Continental Cas. Co.,* 647 F.2d 705, 710 (6th Cir.1981).

> Nevertheless, a plaintiff may state a tort claim in addition to a breach of
> contact claim if the plaintiff is able to demonstrate that tortious conduct by the
> defendant that breached "a duty owed separately from that created by the
> contract, that is, a duty owed even if no contract existed." *Textron,* 684
> N.E.2d at 1270.  In addition, a tort claim arising out of a breach of contract
> "must include actual damages attributable to the wrongful acts of the alleged
> tortfeasor which are *in addition* to those attributable to the breach of the
> contract." *Id.* at 1271; *see also Cincinnati Gas & Elec. Co. v. General Elec.
> Co.,* 656 F.Supp. 49, 62–63 (S.D. Ohio 1986) (emphasis original).

*Wells Fargo Bank, N.A. v. Fifth Third Bank*, 931 F. Supp.2d 834, 838-39, 2013 WL 1064829

(S.D. Ohio 2013).  Under this aspect of Ohio law, Plaintiff faces two problems: First, his tort

claims are based on the same facts that give rise to his breach of contract claim.  His factual allegations do not point to a duty Defendant owed Plaintiff that arose separately from the parties' contract.  The Complaint thus fails to raise a plausible state-tort claim separate from his breach of contract claim.  *See id*. (and cases cited therein).

Second, the Complaint does not allege that Plaintiff suffered actual damages attributable to Defendants beyond the $2,100 in financial harm he allegedly incurred from Defendants' alleged breach of contract.  The closest the Complaint comes to alleging that Plaintiff suffered actual damages beyond those attributable to the purported breach of contract appears in his allegation that he suffered "a stroke by [Defendants'] negligent and intentional infliction of emotional distress."  (Doc. #1, PageID at 58).  Yet, the Compliant contains only conclusory references to Plaintiff's stroke.  He alleges, for instance, that he suffered a stroke "because of [Defendants'] reckless disregard for ... [his] rights...."  *Id*., PageID at 40 (citing Restatement (Second) of Tort 908, 909).  Plaintiff's allegations about his stroke are mere "'naked assertion[s]' devoid of 'further factual enhancement,"  *Iqbal*, 556 U.S. at 678, and are thus insufficient to support a plausible conclusion that he suffered actual damages beyond the financial harm arising from Defendants' alleged breach of contract.

Plaintiff's Complaint raises other allegations concerning the harm he allegedly suffered due to Defendants' misconduct or omissions.  He alleges, in part, "The defendants cheated the plaintiff out of campaigning for public office and the right to hold public office and the right to publicity ....";  "The defendants cheated the plaintiff out of revenue expected from the political campaign website when they failed to publish the website";  and "The

defendant cheated the plaintiff out of liberty and freedom in that the political campaign website and the book was designed not only for financial gain and religious awakening but also to gain public attention to his false imprisonment in a federal prison for almost thirty years without being accused or convicted of any criminal acts and to motivate the general public to take political action against the injustice." (Doc. #1, PageID at 57). "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Drawing on judicial experience and common sense, these and other similar allegations in the Complaint wholly fail to permit a reasonable inference that Defendants were factually or legally responsible for Plaintiff's inability to mount a campaign for political office or to gain financially in any significant way from a book titled, "LORD NAZI His Writings and Teachings for Racist White Supremists and True Christian Warriors of God." Even if LORD NAZI was published and became widely available to the public, it is fantasy bordering on delusion to conclude that Plaintiff would have earned enough money, and would have gained enough public support to run a competitive campaign for public office – especially any national public office – or to obtain a release from his present federal incarceration. The latter is especially so when Plaintiff has fully and repeatedly tested the validity of his incarceration in the courts without success. *See, e.g., Coy Phelps v. United States*, 120 F. App'x 744 (9th Cir. 2005); *United States v. Coy Phelps*, 955 F.2d 1258 (9th Cir. 1992); *Coy Phelps v. Grondolsky*, CIV.A. 11-10083, 2011 WL 761509 (D. Mass. Feb. 24, 2011); *Coy Phelps v. United States*, No. C 13-5627, 2014 WL 1369219 (N.D. Cal., April

7, 2014).  Plaintiff's allegations therefore fail to create a reasonable inference that Defendants caused him the harm he alleges.  As a result, his state-law tort claims lack facial plausibility.  *See Iqbal*, 556 U.S. at 678.

Accordingly, for the above reasons, Defendants are entitled to judgment on the pleadings in their favor on Plaintiff's state-law tort claims.

### E.     Analysis: Breach of Contract and Punitive Damages

Defendants contend that Plaintiff cannot recover punitive damages on his contract claim.  Defendants further contend that if Plaintiff prevails with his contract claim, the most he could recover is $2,100, equaling the amount he paid Defendants for their services.

> The law is quite clear in Ohio that: "As a general rule exemplary damages are not recoverable in actions for the breach of contracts, irrespective of the motive on the part of defendant which prompted the breach.  No more can be recovered as damages than will fully compensate the party injured." This has been the nearly universal rule for some time: see, *e.g., Hadley v. Baxendale* (1854), 9 Ex. 341, 156 Eng. Rep. 145 ....  No matter how willful the breach,' [p]unitive damages are not recoverable in an action for breach of contract.'"

*Digital & Analog Design Corp. v. N. Supply Co.*, 44 Ohio St.3d 36, 46 (1989) (quoting *Saberton v. Greenwald*, 146 Ohio St. 414, 426 (1946) and *Ketcham v. Miller*, 104 Ohio St. 372, 136 N.E. 145, paragraph two of the syllabus (1922)).  Punitive damages are only awarded in cases involving a breach of contract where a plaintiff has established both the breach of contract and an "independent tort involving fraud, malice or oppression ...." *Dominion Liquid Technologies, LLC v. GT Beverage Co., LLC*, 1:11-CV-444, 2014 WL 1045913 at *7 (S.D. Ohio Mar. 14, 2014) (Litkovitz, M.J.) (consent jurisdiction) (citing

20

*Goldfarb v. The Robb Report, Inc.*, 101 Ohio App.3d 134, 141, 1995 WL 488145 (Ohio Ct. App. 1995); *see In re Graham Square, Inc.*, 126 F.3d 823, 828 (6th Cir. 1997) ("Because the sole purpose of contract damages is to compensate the nonbreaching party for losses suffered as a result of a breach, '[p]unitive damages are not recoverable for a breach of contract unless the conduct constituting the breach is also a tort for which punitive damages are recoverable.'" (quoting, in part, *Lake Ridge Academy v. Carney,* 66 Ohio St.3d 376, 613 N.E.2d 183, 187 (1993)).

For the reasons stated previously, Plaintiff's Complaint fails to state a plausible tort claim under Ohio law.  His Complaint thus also fails to raise a reasonable inference, and plausible claim, that Defendants committed a tort independent of his breach of contract claim that involved fraud, malice, or oppression.  Defendants are therefore entitled to judgment on the pleadings in their favor to the extent Plaintiff seeks punitive damages in connection with his breach of contract claim.  *See In re Graham Square*, 126 F.3d at 828; *see also Digital & Analog Design Corp*, 44 Ohio St.3d at 46 (and cases cited therein); *Dominion Liquid Technologies*, 1:11-CV-444, PageID at 3743, 2014 WL 1045913 at *7 (and cases cited therein).

This leaves only Plaintiff's claim for breach of contract under which he seeks to recover $2,100, equaling the amount he allegedly paid Defendants for their services.  This relatively low amount of damages brings subject matter jurisdiction into question, which the Court may consider *sua sponte*.  *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.,* 556 F.3d 459, 465 (6th Cir. 2009) ("[F]ederal courts have a duty to consider their subject matter

21

jurisdiction in regard to every case and may raise the issue *sua sponte.*").

Considering, first, federal question jurisdiction under 28 U.S.C. §1331, when a plaintiff's federal claims are dismissed, the frequent course of action would be for the Court to decline to exercise supplemental jurisdiction over the plaintiff's state-law claims. *See* 28 U.S.C. §1967(c)(3); *see also Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996). At first glance, this procedural scenario seems to play out in the present case, once Plaintiff's federal claims are dismissed. The parties' diverse citizenship, however, also raises the possibility that subject matter jurisdiction exists under 28 U.S.C. §1332(a). If diversity jurisdiction exists, then Plaintiff's state-law claims are properly before this Court without regard to the absence of supplemental jurisdiction. *See Charvat v. NMP, LLC*, 656 F.3d 440, 446 (6th Cir. 2011).

To establish diversity jurisdiction, the matter in controversy must exceed "the sum or value of $75,000 ...."  28 U.S.C. § 1332(a); *see Charvat*, 656 F.3d at 446. "Diversity jurisdiction is defeated when it appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount." *Charvat*, 656 F.3d at 447 (citations and internal quotations omitted). Because Plaintiff is not entitled to punitive damages in connection with his breach of contract claim, *supra*, §III(E), his breach of contract claim if fully vindicated result in $2,100 damages to Plaintiff. Obviously this amount is far less than the minimum jurisdictional requirement of more than $75,000. It thus appears to a legal certainty that Plaintiff cannot claim the minimal jurisdictional amount in support of his breach of contract claim. And, consequently, his breach of contract claim is subject to dismissal for lack of jurisdiction.

**IT IS THEREFORE RECOMMENDED THAT:**

1.  Plaintiff's Motion for Summary Judgment or Judgment as a Matter of Law (Doc. #48) and Plaintiff's Motion to Strike (Doc. #53) be DENIED;

2.  Rion MacConnell's Motion for Partial Summary Judgment or Motion for Partial Judgment on the Pleadings (Doc. #51) be GRANTED;

3.  Plaintiff's sole remaining breach of contract claim be dismissed for lack of subject matter jurisdiction;

4.  Plaintiff's Motion for Certificate of Interlocutory Appeal and Motion for Reconsideration and Motion for Stay in Proceedings (Doc. #54) be DENIED as moot; and

5.  The case be terminated on the docket of this Court.


August 1, 2014

                                         s/Sharon L. Ovington
                                        Sharon L. Ovington
                                Chief United States Magistrate Judge

23

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).